In the Matter of Tommy Lee
THOMAS, Debtor.

STATE OF IOWA, ex rel. Jacquelyn
THOMAS; Jacquelyn Thomas, Individu-
ally; Katrina Louise and Latisha Lea by
Jacquelyn Thomas, their mother and
next friend; State of Iowa and Iowa
Department of Social Services, Plain-
tiffs,

v.

Tommy Lee THOMAS, Defendant.

Bankruptcy No. 80–1055–D.
Adv. No. 80–0203.

United States Bankruptcy Court,
S. D. Iowa.

July 2, 1981.

Asst. Atty. Gen. E. Dean Metz, Burling-
ton, Iowa, for State of Iowa.

Steven R. Hahn, Burlington, Iowa, for
Tommy Lee Thomas.

## MEMORANDUM OF DECISION

RICHARD STAGEMAN, Bankruptcy
Judge.

At Des Moines, in the Southern District
of Iowa, on the 2nd day of July, 1981.

On the 10th day of October, 1980, the
State of Iowa filed a complaint in this case
seeking a determination whether a debt due
the State of Iowa is dischargeable. The
interested parties have agreed to the facts.

A decree of dissolution of marriage filed
in the state District Court for Des Moines
County on April 11, 1975, granted Jacque-
lyn Thomas a judgment against the debtor
in this case, Tommy Lee Thomas, for the
support of two minor children, Katrina
Louise Thomas (age 3) and Latisha Lea
Thomas (age 8 mos.). The judgment re-
quired the debtor to pay the plaintiff $35
each week for each child until the children
reached eighteen years of age.

In April of 1974, Jacquelyn Thomas as-
signed the state court child support judg-
ment to the Iowa Department of Social
Services in order to receive assistance under
Iowa's Aid to Dependent Children program.
Since that time the state has provided the
two Thomas girls financial assistance pur-
suant to that program. See Chapter 239
*Code of Iowa* (1981).

The debtor filed a voluntary petition in
bankruptcy on July 7, 1980.

The parties further agree that the child
support payments of the debtor in arrears
on the date of bankruptcy are discharged
by reason of the provisions of 11 U.S.C.
§ 523(a)(5)(A).

The plaintiff and the defendant cannot agree on the status of the child support installment payments fixed by the state court's judgment which are due subsequent to the date of bankruptcy.

The plaintiff contends that the post bankruptcy child support installments are non-dischargeable. This is the issue the court must decide.

The relevant portions of the Bankruptcy Code are as follows:

Section 523.

"(a) A discharge under Section 727, ... of this title does not discharge an individual debtor from any debt—...

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; ..."

Section 101.

"(4) 'claim' means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; ...

. . . .

(9) 'creditor means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim;

. . . .

(11) 'debt' means liability on a claim;

. . . .

(14) 'entity' includes person, estate, trust, governmental unit; ..."

The State of Iowa is a "creditor" in this bankruptcy case if it was an entity with a "claim" for future child support that arose at the time of or prior to the order for relief was entered. In this case the date of filing the debtor's petition. These are questions of federal law, as those terms are defined in the Bankruptcy Code.

It is an "entity" because it is a governmental unit. Section 101(14).

■ The existence of a "claim" turns on when it arose. When a debt serving as the basis of claim arose, in the absence of overriding federal law, is to be determined by state law. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

■ The definition of "claim" could not be broader. All legal obligations of the debtor, no matter how remote or contingent, will be dealt within a bankruptcy case. See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 309; Senate Report No. 95–989, 95th Cong. 2nd Sess. (1978) 21, U.S.Code Cong. & Admin.News 1978, p. 5787. See also *In re Cloud Nine, Ltd.*, 3 B.R. 202, 1 C.B.C.2d 445 (Bkrtcy., D.N.M. 1980).

■ The State of Iowa has a "claim" against the debtor because it arose prior to the bankruptcy order for relief. The fact that a court-ordered child-support judgment lien does not attach until an installment is due, *Broyles v. Iowa Department of Social Services*, 305 N.W.2d 718 (Iowa 1981), is not relevant. Jacquelyn Thomas could legally assign future judgments under Iowa law. *Id.* It is that right that gives rise to the state's "claim." In *Siver v. Shebetka*, the Iowa Supreme Court stated:

■ Our decisions establish that where a decree has been entered for alimony, payable in instalments at stated intervals, each instalment becomes a binding final judgment as it falls due and cannot be subsequently modified, even under the statute allowing modification upon a showing of changed conditions. *Walters v. Walters, supra*, 231 Iowa at page 1270, 3 N.W.2d at page 596, and authorities cited.

■ Such judgment does not represent a debt of the husband or a property right of the wife, the purpose of which can be thwarted by garnishment of fraudulent conveyance, bankruptcy proceedings, exemption statutes or constitutional prohibition of imprisonment for debt.

But it nevertheless creates a vested right of the wife to receive, and an adjudicated obligation of the husband to pay, a definite sum of money. What was originally fundamental but indefinite and unliquidated is reduced to terms of dollars and cents. Limitations that have been placed on it by judicial definition were designed not to destroy but to prevent destruction of its usefulness.

*Siver v. Shebetka*, 245 Iowa 965, 65 N.W.2d 173, 175 (1954).

The debtor became liable for all child support payments when he was judicially ordered to pay them. The operative facts giving rise to the obligation were all extant prior to bankruptcy. The post-bankruptcy installments may not have become judgments, and they were contingent and unmatured, but Section 101(4) discounts such considerations entirely. The liability of the debtor for the state's claim to post-bankruptcy child support payments gives rise to a "debt" which is dischargeable in bankruptcy.*

The purpose of § 523(a)(5)(A) is to prevent another entity from acquiring the privileged status of dependents under bankruptcy law. *In re Allen*, 4 B.R. 617, 619 (E.D.Tenn.1980). If Congress had intended to except child support obligations assigned to a governmental unit, as an entity, as an exception within an exception, it could have easily done so. It did not, and this court is not empowered to rewrite the statute. Neither is the fact that Congress may now have second thoughts about its handy work of 1978 in this regard.**

The plaintiff's petition should be dismissed.

An appropriate order will be entered herewith.

---

* Any debt arising from a claim that Jacquelyn Thomas may have personally for the right to child support payments arising under the decree of dissolution of marriage here is not intended to be affected by this decision. The court would venture that an assignment of the state's claim to past child support payments to Jacquelyn Thomas designed to reinstate her personal rights would be a trespass on this decision.

** See S. 658, 96th Cong. 2nd Sess. § 39 which proposes to eliminate the assigned judgment to another entity exception.