OPINION OF THE COURT
ADAMS, Circuit Judge.
This is an appeal by Avellino & Bienes (A & B) from a ruling by the district court, affirming the judgment of the bankruptcy court, that A & B’s action against M. Frenville Co., Inc. and Rudolf Frenville, Sr. was barred by the automatic stay provision of the Bankruptcy Reform Act of 1978 (the Code), 11 U.S.C. § 362(a)(1) (1982). The critical issue is whether the automatic stay provision applies to situations in which the acts of the debtor occurred before the filing of the bankruptcy petition yet the cause of action stemming from those acts arose post-petition. For the reasons set forth, we reverse the district court’s judgment.
I.
The facts of this case are undisputed. A & B is a certified public accounting firm located in New York City. From 1977 to 1979 A & B was engaged by M. Frenville Co., Inc. as an independent auditor and accountant. As part of its duties, A & B prepared certified financial statements of the company for fiscal years 1978 and 1979.
In July 1980, creditors of Frenville filed an involuntary petition for bankruptcy against the company under chapter 7 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§. 701 et seq. (1982). In January 1981, creditors also filed involuntary petitions under chapter 7 of the Code against two principals of the company: Rudolph Frenville, Sr. and Rudolph Frenville, Jr.[1]
The Chase Manhattan Bank, N.A., the Fidelity Bank, Fidelity International Bank and Girard International Bank (the banks) filed suit in the Supreme Court of New York on November 16, 1981, against A & B. The complaint alleged that A & B negligently and recklessly prepared the Frenville financial statements, that the statements were false, and that because of their reliance on the statements, the banks had collectively suffered losses in excess of five million dollars.
As a result of the suit by the banks, A & B filed a complaint on January 10, 1983, in the Bankruptcy Court for the District of New Jersey, which was administering the Frenvilles’ chapter 7 proceedings. In the bankruptcy court, A & B sought relief from the automatic stay provision of § 362(a) in order to include the Frenvilles *334 as third-party defendants in the New York state proceeding. The purpose of the third-party complaint was to obtain indemnification or contribution from the Frenvilles for any loss suffered by A & B as a result of the suit by the banks.
The bankruptcy judge held the automatic stay provision of § 362(a) was applicable to A & B’s suit because the Frenvilles’ liability, if any, resulted from their pre-petition acts. Moreover, the bankruptcy judge refused to grant relief from the automatic stay as provided in § 362(d) of the Code.[2] The district court affirmed the bankruptcy judge’s order that the automatic stay barred A & B’s action for indemnification or contribution.
II.
We must decide today whether the automatic stay of § 362(a) of the Code is applicable when the debtor’s acts which form the basis of a suit occurred pre-petition but the actual cause of action which is being instituted did not arise until after the filing of a bankruptcy petition. The automatic stay provision provides that
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
11 U.S.C. § 362(a)(1) (emphasis added).
The automatic stay provision of § 362(a) is one of the fundamental protections provided to a debtor by the Code. Congress’ intent in enacting § 362(a) is clear — it wanted to stop collection efforts for all antecedent debts. Congress intended that the debtor obtain a fresh start, free from the immediate financial pressures that caused the debtor to go into bankruptcy. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 340-42 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49-51 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; see also Turner Broadcasting System, Inc. v. Sanyo Electric Inc., 33 B.R. 996, 999-1000 (N.D.Ga.1983); 1 W. Norton, Jr., Norton Bankruptcy Law and Practice § 20.04 (1981).
Yet despite the broad reach of the automatic stay, it is not all encompassing. Section 362(b), for example, provides exemptions from the automatic stay.[3] As a *335 further restriction, the Code requires that the proceeding stayed “was or could have been commenced” before filing or that the proceeding was based on a claim that arose pre-petition. § 362(a)(1); see In re York, 13 B.R. 757, 758 (Bankr.D.Me.1981). Proceedings or claims arising post-petition are not subject to the automatic stay. See, e.g., Turner Broadcasting System, Inc. v. Sanyo Electric, Inc., 33 B.R. 996, 999-1000 (N.D.Ga.1983); In re Powell, 27 B.R. 146, 147 (Bankr.W.D.Mo.1983); In re Anderson, 23 B.R. 174, 175 (Bankr.N.D.Ill.1982); In re York, 13 B.R. 757, 758-59 (Bankr.D.Me.1981). In Anderson, for example, the debtor signed a contract for shipping services with several shipping companies on August 1, 1981. On November 12, 1981, the debtor filed a petition for relief under chapter 13 of the Code. Three months after the petition was filed the shipping companies commenced suit, alleging that the debtor had submitted fraudulent shipping charges. The court held that the automatic stay did not apply. Although the parties had signed the contract pre-petition, the alleged fraud did not begin until December 24, 1981, a month after the petition was filed. Since the shipping companies’ claim arose post-petition, the bankruptcy court declared that § 362(a) was inapplicable.
Only proceedings that could have been commenced or claims that arose before the filing of the bankruptcy petitions are automatically stayed. It is undisputed that the Frenvilles’ acts which ultimately led to A & B’s suit for indemnification or contribution occurred in 1978 or 1979, well before the chapter 7 petitions were filed. Section 362(a)(1), however, refers to “proceedings” and “claims” against, not acts done by, the debtor. Pre-petition acts by a debtor, by themselves, are not sufficient to cause the automatic stay to apply. In most cases, the claim or cause of action will arise simultaneously with the underlying act. But to the extent that the harm is separated from the underlying conduct, at least for purposes of § 362(a), Congress has focused on the harm, rather than the act. Cf. Anderson, 23 B.R. at 175 (“The fact that a contract was executed among the parties [pre-petition] is not sufficient basis to hold that the claim arose prior to filing.”); In re THC Financial Corp., 686 F.2d 799, 804 (9th Cir.1982) (although express indemnity agreement arose pre-petition, the related unjust enrichment claim arose post-petition). Thus, unless A & B could have proceeded with its suit before the bankruptcy petitions were filed in July 1980,[4] or had a claim against the Frenvilles which arose before that date, the automatic stay is inapplicable.
The proceeding which A & B sought to institute was an action for indemnity or contribution in New York state court. According to New York law, a third-party complaint for contribution or indemnity may be commenced at the time the defendant (in the present case A & B) serves his answer in the suit brought by the plaintiff (here, the banks), but not before. N.Y.Civ.Prac.Law § 1007 (McKinney 1976);[5] see also Blum v. Good Humor Corp., 57 A.D.2d 911, 394 N.Y.S.2d 894 (N.Y.App.Div.1977); Taca International Airlines, S.A. v. Rolls Royce of England, Ltd., 47 Misc.2d 771, 263 N.Y.S.2d 269, 272 (N.Y.Sup.Ct.1965) (indemnification suit “could not be commenced by defendants until after service of their answer”); Musco v. Conte, 22 A.D.2d 121, 254 N.Y.S.2d 589, 595 (N.Y.App.Div.1964). In the present situation, A & B could not bring a *336 proceeding for indemnification or contribution until it filed its answer in the suit instituted by the banks on November 16, 1981, some fourteen months after the filing of the bankruptcy petitions. Consequently, A & B’s suit cannot be stayed by the “proceeding” language of § 362(a)(1).
The applicability of the automatic stay, therefore, depends on whether A & B’s claim arose pre-petition. The Code defines a “claim” as a
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, dispute, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;
11 U.S.C. § 101(4) (1982).
Congress intended the definition of a claim to be very broad; the legislative history states:
The definition is any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured____ By this broadest possible definition and by the use of the term throughout the title 11, especially in sub-chapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.[6]
At first glance, A & B might be thought to have had an 'unliquidated, contingent, unmatured and disputed claim pre-petition. While all of these adjectives may describe A & B’s cause of action against the Frenvilles, the threshold requirement of a claim must first be met — there must be a “right to payment.” § 101(4)(A). One court noted that “although the code definition of claim has been drafted in extremely broad terms, such definition may not confer the status of a claimant upon a petitioning creditor who has no right to payment.” In re First Energy Leasing Corp., 38 B.R. 577, 581 (Bankr.E.D.N.Y.1984); see also In re McMeekin, 16 B.R. 805, 808 (Bankr.D.Mass.1982).
Thus we must determine at what point A & B had a “right to payment” for its claim for indemnification or contribution. Of course, if A & B is found liable to the banks, it would have a right to payment from the Frenvilles (assuming liability for the moment), albeit a disputed and unliquidated one. The crucial issue, however, is when did A & B’s right to payment arise, for the automatic stay provision applies only to claims that arise pre-petition. See In re Thomas, 12 B.R. 432, 433 (Bankr.S.D.Iowa 1981) (“The existence of a ‘claim’ turns on when it arose.”).
The present case is different from one involving an indemnity or surety contract. When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent,[7] upon the signing of the agreement. See In re THC Financial Corp., 686 F.2d 799, 802-04 (9th Cir.1982); In re All Media Properties, Inc., 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), aff'd, 646 F.2d 193 (5th Cir. *337 (Unit A) 1981) (per curiam). Such a surety relationship is the classic case of a contingent right to payment under the Code — the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event. See All Media, 5 B.R. at 133. A & B, however, had no indemnity agreement with the Frenvilles. Accordingly, cases holding that a claim arises upon the signing of an indemnity agreement are inapposite.
We must ascertain when a right to payment for an indemnity or contribution claim arises where there is no specific agreement. Although “claim” is defined by § 101(4), the Code does not define when a right to payment arises. Thus, while federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, “is to be determined by reference to state law.” Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946); see also In re McMeekin, 16 B.R. 805, 808 (Bankr.D.Mass.1982); In re Thomas, 12 B.R. 432, 433 (Bankr.S.D.Iowa 1981).[8]
We look to New York law to ascertain at what point A & B’s claim arose. For both separate actions and third-party complaints, a claim for contribution or indemnification does not accrue at the time of the commission of the underlying act, but rather at the time of the payment of the judgment flowing from the act. See Blum v. Good Humor Corp., 57 A.D.2d 911, 394 N.Y.S.2d 894, 896 (N.Y.App.Div.1977); Taca International Airlines, S.A. v. Rolls Royce of England, Ltd., 47 Misc.2d 771, 263 N.Y.S.2d 269, 272 (N.Y.Sup.Ct.1965). Although such a claim does not mature until payment is made, the New York Civil Practice Code permits a defendant to institute a third-party claim against a party who may be liable to him for all or part of the plaintiff’s claim after service of his answer. N.Y.Civ.Prac.Law § 1007 (McKinney 1976). In circumstances similar to the present case, one court declared:
Technically a claim for indemnity does not arise until the prime obligation to pay has been established____ Nevertheless, for the sake of fairness and judicial economy, [N.Y.Civ.Prac.Law § 1007] allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action____ Moreover, there is no justification for permitting a claim of indemnity where the primary action which might be the source of the right to indemnity ... is not even pending.
Burgundy Basin Inn v. Watkins Glen Grand Prix Corp., 51 A.D.2d 140, 379 N.Y. S.2d 873, 880 (1976 N.Y.App.Div.) (citations omitted).
In the ease at bar, A & B had an unmatured, unliquidated, disputed claim when the banks brought suit against it in New York state court. Until the banks instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the Frenvilles. Since the banks’ suit began some fourteen months after the filing of the Frenvilles’ involuntary chapter 7 proceedings, A & B’s claim, as well as its cause of action, arose post-petition. Although arguably A & B may have had some claim at the time the Frenvilles gave it allegedly false information, it did not have a claim for indemnification or contribution until the banks filed their suit. Thus, by its very terms, the automatic stay provision of § 362(a) is inapplicable to A & B’s suit.
III.
Our decision today is in keeping with the policy of the Code. Congress has deter *338 mined that only those claims which arise pre-petition[9] can be discharged in a chapter 7 proceeding.[10] Since claims arising post-petition are not dischargeable, there is no compelling reason to stay judicial proceedings predicated on such claims. See Turner Broadcasting, 33 B.R. at 1000; In re Shenberg, 433 P.Supp. 677, 680 (N.D.Ill. 1977); Kennedy, The Automatic Stay in Bankruptcy, 11 U.Mich.J.L.Ref. 177 (1978).
IV.
We conclude that the automatic stay does not apply to A & B’s proposed action against the Frenvilles.[11] Therefore, the district court’s judgment will be reversed and the matter remanded for proceedings consistent with this opinion.

. M. Frenville Co., Inc. will be referred to as "Frenville.” M. Frenville Co., Inc. and Rudolph Frenville, Sr. collectively will be referred to as the "Frenvilles.” Rudolph Frenville, Jr., although involved in the bankruptcy proceedings, is not a party to A & B’s proposed action.

. Since we hold that the automatic stay, by its own terms, is inapplicable in the present case, we need not reach the issue of whether relief from the stay was warranted.

. In addition to the restriction of § 362(a)(1), the Code states that:
(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—
(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;
(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate;
(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee’s rights and powers are subject to such perfection under section 546(b) of this title;
(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
(6) under subsection (a) of this section, of the setoff by a commodity broker, forward contract merchant, stockbroker, or securities clearing agency of any mutual debt and claim under or in connection with commodity contracts. ...
(7) under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by said Secretary is insured or was formerly insured under the National Housing Act____; or
*335 (8) under subsection (a) of this section, of the issuance to the debtor by a governmental unit of a notice of tax deficiency.

. For convenience, we will refer to the earlier July 1980 petition against Frenville as the filing date for both petitions; nothing of consequence occurred between July 1980 and January 1981.

. N.Y.Civ.Prac.Law § 1007 states (in pertinent part):
After the service of his answer, a defendant may proceed against a person not a party who is or may be liable to him for all or part of the plaintiff's claim against him, by serving upon such a person a summons and third-party complaint and all prior pleadings served in the action.

. H.R.Rep. No. 595, 95th Cong., 2d Sess. 309, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6266; see also S.Rep. No. 989, 95th Cong., 2d Sess. 21-22, reprinted in 1978 U.S.Code Cong. & Ad.News 5785, 5807-08 (virtually identical statement).

. Bankruptcy judges have defined a contingent claim as a claim which becomes due only on the occurrence of a future event. See, e.g., In re Dill, 30 B.R. 546, 549 (Bankr. 9th Cir.1983). One frequently cited definition of contingent is that "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event." In re All Media Properties, Inc., 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), aff'd, 646 F.2d 193 (5th Cir. (Unit A) 1981) (per curiam).

. If there were some overriding federal policy, we might have the power to develop federal law. See In re Beck Indus., Inc., 725 F.2d 880, 891 (2d Cir.1984); In re Johns-Manville Corp., 36 B.R. 743, 751 n. 4 (Bankr.S.D.N.Y.), appeal denied, 39 B.R. 234 (S.D.N.Y.1984). A bankruptcy proceeding stemming from a mass tort — such as exposure to asbestos — may be a case in which the application of federal law is indicated.

. Technically, the date crucial for discharge (as opposed to the automatic stay) is the date of the bankruptcy court’s order for relief. In the present case, the bankruptcy judge entered orders for relief within a month of the filing of the petitions.

. 11 U.S.C. § 727(b) (1982) provides that:
Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.
Other discharge provisions in the Code are 11 U.S.C. §§ 944, 1141, 1328, 15727 (1982).

. Should A & B succeed in obtaining a judgment against the Frenvilles in the New York proceeding, the provisions of § 362(a)(3) and (4) would be applicable. See Turner Broadcasting System, Inc. v. Sanyo Electric, Inc., 33 B.R. 996, 1000 n. 2 (N.D.Ga.1983); In re Powell, 27 B.R. 146, 147 (Bankr.W.D.Mo.1983); In re Anderson, 23 B.R. 174, 175 (Bankr.N.D.Ill.1982); In re York, 13 B.R. 757, 758-59 (Bankr.D.Me.1981).
11 U.S.C. § 362(a)(3) and (4) (1982) provide:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
(3) any act to obtain possession of property of the estate or of property from the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
Thus, A & B will have to seek relief from the automatic stay to collect any judgment it might obtain.