**In re Francis BERLINGERI, M.D., Debtor.**

**Joanne Buglione, Plaintiff,**

v.

**Francis Berlingeri, M.D., Defendant.**

**Bankruptcy No. 96–29325(NLW). Adversary No. 97–2174.**

United States Bankruptcy Court, D. New Jersey.

Feb. 24, 2000.

Stuart Gold, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, PC, Short Hills, NJ, for Plaintiff.

Vincent D. Commisa, Commisa & Campanile, PC, Livingston, NJ, for Debtor/Defendant.

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter came before the Court on an adversary complaint for relief under 11

U.S.C. §§ 523(a)(5), (a)(6) and (a)(15). On plaintiff's motion in limine for a determination that plaintiff's claims accrued post-petition and are thus non-dischargeable, the Court grants relief.

The following constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. The matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court has jurisdiction under 28 U.S.C. § 1334 and the Standard Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.

## BACKGROUND

In August 1994, after seventeen years of marriage, the debtor/defendant, Francis Berlingeri ("Berlingeri"), filed for divorce from Joanne Buglione ("Buglione"). Just prior to the commencement of the trial before the Honorable Thomas Zampino, in the Superior Court of New Jersey, Berlingeri filed the instant Chapter 7 case on October 17, 1996. Counsel for Buglione requested and received from this Court an order for relief from the automatic stay so that the trial might proceed before Judge Zampino.

Judge Zampino issued his opinion on January 14, 1997, and a judgment incorporating his rulings was entered on March 4, 1997. The court dissolved the marriage and directed, *inter alia*, that Berlingeri (i) make regular alimony and support payments, (ii) pay Buglione's attorney's fees and certain other professional fees, and (iii) hold Buglione harmless with respect to marital debts identified on the Case Information Statement filed in the matrimonial case.

Additionally, Berlingeri and Buglione entered into a consent judgment in March, 1997 to resolve Buglione's counterclaim based on marital tort. Berlingeri agreed to pay Buglione $25,000 over time, plus the fees for her trial expert. Berlingeri further stipulated that his obligations under this settlement were non-dischargeable under 11 U.S.C. § 523(a)(6).

Buglione thereafter filed this adversary proceeding. In Counts I and II, she seeks a determination that the relief afforded her by the March 4, 1997 judgment of the matrimonial court is non-dischargeable under §§ 523(a)(5) and (a)(15), respectively. In Count III, she requests that the $25,000 settlement amount, which resolved her marital tort (the "Tevis" claim[1]), be declared nondischargeable under 11 U.S.C. § 523(a)(6). Berlingeri does not seriously contest the non-dischargeability of the Tevis claim. However, he does not concede that the obligations to pay the professional fees or to hold Buglione harmless with respect to matrimonial debts constitute non-dischargeable support obligations under 11 U.S.C. § 523(a)(5). Rather, Berlingeri urges that they constitute elements of equitable distribution which are subject to discharge because he does not have the ability to pay them, and thus 11 U.S.C. § 523(a)(15)(A) is applicable.

As part of her pre-trial submission to this Court, Buglione argued that the Court need not try the matter because her claims for support and equitable distribution from Berlingeri arose after his Chapter 7 case was filed and thus do not constitute pre-petition debts subject to discharge. After consideration of the argument of counsel, the Court finds Buglione's argument persuasive and grants summary judgment in her favor on all counts.

## DISCUSSION

The issue in this case is whether Buglione's claims for support and equitable distribution arose after Berlingeri filed for Chapter 7 relief. If Buglione's claims arose subsequent to Berlingeri's bankruptcy filing, they constitute post-petition

---

1. Named for the New Jersey Supreme Court case, *Tevis v. Tevis*, 79 N.J. 422, 434, 400 A.2d 1189, 1196 (1979), which held that under the "single controversy" doctrine, marital tort claims should be presented in conjunction with the divorce action in an attempt to resolve all of the parties' legal disputes in one proceeding.

debts and are non-dischargeable under 11 U.S.C. § 727(b). However, if Buglione's claims for support and equitable distribution arose prior to Berlingeri's bankruptcy filing, § 727(b) is inapplicable, and the Court must determine the dischargeability of each claim under §§ 523(a)(5) and, if necessary, (a)(15). Because the Court finds that Buglione's claims, under Counts I and II, arose post-petition, they are non-dischargeable under § 727(b). A dischargeability determination under §§ 523(a)(5) and (a)(15) is therefore unnecessary. The Court also finds that the Tevis claim in Count III is non-dischargeable because Buglione and Berlingeri stipulated, as part of the consent judgment, that this claim was non-dischargeable under § 523(a)(6).

## I.

■ In large measure this case turns on the point at which a claim for equitable distribution arises. Buglione argues that a claim does not arise until a judgment of divorce is entered, while Berlingeri asserts that a claim arises upon the filing of a divorce action. The Court finds Buglione's argument more persuasive.

Section 727(b) of the Bankruptcy Code specifies that "[e]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter...." 11 U.S.C. § 727(b) (1999). Resolution of when Buglione's claims for equitable distribution arose requires (i) consideration of the New Jersey law of equitable distribution, (ii) application of the terms "debt" and "claim" as they are used in the Bankruptcy Code, and (iii) consideration of *Avellino & Bienes v. M. Frenville Co. (In re Frenville)*, 744 F.2d 332 (3d Cir.1984).

■ It is well understood that the bankruptcy court must look to state law to determine the extent and nature of the property rights held by parties to a bankruptcy and that "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *In re Hursa*, 87 B.R. 313, 315 (Bankr.D.N.J.1988) (quoting *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1978)). Thus, the Court must first look to N.J.S.A. 2A:34–23 which provides that "[i]n all actions where a judgment of divorce ... is entered the court may make such award or awards to the parties ... to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." N.J. Stat. Ann. § 2A:34–23 (West 1999). Construing this statute, the New Jersey Supreme Court has held that "[b]y the plain terms of the statute," the right to equitable distribution of marital property arises upon entry of the judgment of divorce. *See Carr v. Carr*, 120 N.J. 336, 342, 576 A.2d 872, 875 (1990).

In *Carr*, the New Jersey Supreme Court addressed the issue of whether the wife could maintain an equitable distribution claim against the estate of her estranged husband who died while the divorce action was pending, but before judgment was entered. Both of the lower courts had concluded that Mrs. Carr could not obtain equitable distribution because her husband's death terminated the divorce proceeding and thus, no judgment of divorce could be entered. The New Jersey Supreme Court affirmed, holding that the case was governed by the rule that "statutory equitable distribution is conditioned on termination of marriage by divorce." *See id.* at 343, 576 A.2d at 876. In short, in the absence of the judgment of divorce, Mrs. Carr did not have an equitable distribution claim that could be asserted against her husband's estate.

Importantly, the court in *Carr* observed that it had consistently interpreted the equitable distribution statute to authorize distribution of marital assets only upon

termination of the marriage by divorce. *See id.* at 342, 576 A.2d at 875. Indeed, in one earlier case the New Jersey Supreme Court observed:

> It is important to bear in mind that nothing in our statute effects any change with respect to the ownership of property as between husband and wife prior to the entry of a judgment of allocation. Prior to that event neither spouse, by virtue of this statute, acquires any interest in the property of the other.

*Painter v. Painter,* 65 N.J. 196, 216 n. 5, 320 A.2d 484, 494 n. 5 (1974).

Although he acknowledges the foregoing authority, Berlingeri counters that as a consequence of the commencement of the matrimonial action, Buglione possessed a potential claim for equitable distribution. In support of his contention, Berlingeri cites the Court to *Di Iorio v. Di Iorio,* 254 N.J.Super. 172, 181, 603 A.2d 127, 132 (Ch.Div.1991), which commented in pertinent part, that "in New Jersey, all non-immune assets of the parties become subject to equitable distribution, and thus, each party has a potential claim to the assets of the other." Therefore, Berlingeri contends that Buglione's potential claims for equitable distribution fall within the scope of the definition of claim set forth in the Bankruptcy Code so as to constitute a debt he can discharge pursuant to § 523(a)(15).

Berlingeri correctly points out that the Bankruptcy Code defines a debt as a "liability on a claim[.]" *See* 11 U.S.C. § 101(12) (1999). Further, pursuant to § 101(5), a claim is a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;

or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5) (1999). Applying the Bankruptcy Code definition of claim, Berlingeri argues that Buglione's potential equitable distribution claims meet the definitional criteria because the definition itself states that a claim is a right to payment "whether or not such right is reduced to judgment."

The Court agrees with Berlingeri that once a divorce proceeding is commenced, both parties have a right to seek equitable distribution. However, Berlingeri's conclusion is unpersuasive because it does not recognize the critical language in the definition of claim, and does not take into account the *Frenville* decision. The key phrase in § 101(5) is "right to payment." The balance of the language of subsection (A) simply provides that to constitute a claim, the right to payment need not be reduced to an established dollar figure. The Third Circuit, in interpreting § 101(5), has held that the issue of when a right to payment arises is to be resolved by reference to state law. *See In re Frenville,* 744 F.2d 332, 337 (3d Cir.1984). Berlingeri, in an attempt to define "right to payment" by emphasizing the modifying clause in § 101(5), ignores *Frenville*'s directive. Additionally, Berlingeri ignores the *Carr* decision and its interpretation of New Jersey's equitable distribution statute. Application of *Frenville* and New Jersey law yields the conclusion that Buglione's claims for equitable distribution did not arise until the judgment of divorce was granted. Thus, her claims constitute a non-dischargeable post-petition obligation of Berlingeri.

In reaching its decision, this Court has relied on the thoughtful analysis made by the court in *In re Scholl,* 234 B.R. 636 (Bankr.E.D.Pa.1999). Although the *Scholl* court dealt with Pennsylvania's equitable distribution statute, the law is sufficiently similar and the facts are sufficiently analo-

gous to make the case readily applicable to the situation at hand. The facts of *Scholl* parallel this case in several ways, including that the matrimonial action was ongoing, relief from stay was granted so to complete the matrimonial action, an adversary proceeding was filed, and § 523(a)(15) was at issue.

In *Scholl*, the debtor's estranged wife commenced a divorce action four years before the debtor filed for Chapter 7 relief. In that proceeding, she requested equitable distribution of marital property as well as alimony pendente lite, counsel fees and costs. The debtor listed his wife as an unsecured creditor for approximately $135,000 based on the potential equitable distribution award. At the request of the wife, the Bankruptcy Court granted relief from the automatic stay in order that the divorce and equitable distribution proceedings could go forward. In order to protect any equitable distribution award from discharge, the wife also filed an adversary proceeding under § 523(a)(15). Before trial in the matrimonial court, the wife moved for summary judgment in the adversary proceeding on the ground that any of her rights to marital property subject to future distribution by the matrimonial court are vested property rights not subject to discharge in the bankruptcy case. As does Berlingeri, the debtor rejected his wife's analysis and argued that the Bankruptcy Code definitions of "claim" and "debt" are broad enough to encompass whatever rights his wife might have in the marital property.

The *Scholl* court observed that the initial focus in any case defining the parameters of a "claim" is upon the concept of a "right to payment." *See id.* at 641. It noted that the Supreme Court recently discussed the pertinent Code sections in attempting to define a "claim:"

> A "debt" is defined in the Code as "liability on a claim," § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment,"

we have said, "is nothing more nor less than an enforceable obligation."

*Cohen v. De La Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (quoting *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)). The *Scholl* court concluded that despite the broad application of a "claim," the Supreme Court has clearly enunciated that it does not include rights that do not constitute enforceable obligations. *See Scholl*, 234 B.R. at 641.

Applying *Frenville*, the *Scholl* court examined Pennsylvania's domestic relations law and determined that a "right to payment" arises upon the entry of an agreement of the parties or an equitable distribution order. *See id.* at 641–42. More comprehensively, the court concluded that "while rights to equitable distribution vest against marital property upon the filing of a divorce action, only the entry of an agreement of the parties or an equitable distribution order can create enforceable rights as against a spouse, and thus potentially give rise to a 'right to payment.'" *Id.* at 642–43. Inevitably, without a cause of action, no bankruptcy claim arises, and without a claim, there is no debt. *See id.* at 643.

## II.

█ The non-dischargeability of the Tevis claim is also readily apparent. The Tevis claim is for a marital tort grounded in assault, battery, and intentional infliction of emotional distress. Claims based on injury caused by intentional acts done to cause injury are typically non-dischargeable under 11 U.S.C. § 523(a)(6). *See, e.g., In re Moberg*, 156 B.R. 810, 814 (Bankr.D.Minn.1993) (claim for sexual battery was an intentional physical injury non-dischargeable under § 523(a)(6)). Moreover, the Tevis claim was settled pursuant to a consent judgment prior to it being tried. At the time of settlement, Berlingeri was represented by both bankruptcy and matrimonial counsel and his

bankruptcy case had been pending for some months. It is evident that the parties intended to settle intentional tort claims and intended that the settlement would survive a bankruptcy discharge.

■■ It is well settled that the principles of collateral estoppel apply in dischargeability proceedings in bankruptcy court. *See Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Because the consent judgment was entered by a New Jersey court, it is necessary to look to New Jersey law on the collateral estoppel effect of a consent judgment. As set forth in *Public Service Electric & Gas Co. v. Waldroup,* 38 N.J.Super. 419, 426, 119 A.2d 172, 175 (App.Div.1955), it is presumed that a consent judgement is entered in light of all of the circumstances of the litigation, and it is treated as an adverse judgment for purposes of collateral estoppel. Thus, the Court is satisfied that by the nature of the claims, their express intent and the principles of collateral estoppel, the parties are bound by the terms of their consent judgment, and Berlingeri's obligation to satisfy the claim is non-dischargeable.

### CONCLUSION

Analysis of when a right to payment arises under New Jersey law, as dictated by *Frenville,* commands a legal conclusion in line with *Scholl.* New Jersey statutory and case law is even more clear than Pennsylvania law in finding that a right to payment arises only upon a judgment of divorce. Thus, Buglione's claims arose after Berlingeri's Chapter 7 case was filed and do not constitute pre-petition debts subject to discharge. Moreover, by application of the principles of collateral estoppel, the Tevis claim is also non-dischargeable. Accordingly, the Court GRANTS summary judgment in Buglione's favor on all counts.