**In re Valerie C. RETORT, Debtor.**

**No. 01–23056 BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 23, 2003.

John G. Harshman, Esq., Pittsburgh, PA, for Debtor.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor, Valerie C. Retort, brought a motion to reopen her bankruptcy case and a motion to amend Schedule F in order to include a debt owed to respondent, Mary K. Thanos. Respondent objected on the ground that said debt was a post-petition obligation. Debtor's motions to reopen the bankruptcy case and to amend Schedule F are denied for the reasons set forth below.

### – FACTS –

Debtor filed a voluntary chapter 7 petition on March 27, 2001. The accompanying schedules did not include a debt owed to respondent Mary Kay Thanos, Esquire. Debtor's case was closed pursuant to a Final Decree issued by this court on July 24, 2001. On April 25, 2003, debtor filed a motion to reopen her bankruptcy case and a motion to amend Schedule F in order to include a debt in the amount of $5,000.00 owed to respondent Mary Kay Thanos, Esquire. Respondent Thanos objected to the motions.

A hearing on the motions and respondent's opposition thereto was held on July 10, 2003. During the hearing, a dispute arose as to whether the debt in question was a pre– or post-petition obligation. Debtor's bankruptcy case was provisionally reopened and debtor was permitted to amend her Schedule F. Further, an evidentiary hearing was held on September 8, 2003, to determine whether the debt at issue was a pre– or post-petition obligation.

Debtor retained respondent Thanos on or about January 10, 2001, to represent her in a child support modification hearing

in the State of Indiana. To that end, Debtor paid a $700.00 retainer and the parties later executed an "Attorney Fee Contract" (fee contract), which became a subject of dispute during the evidentiary hearing. Notwithstanding that the fee contract was dated January 9, 2001, respondent testified that debtor signed the contract in early June of 2001 in an Indiana courtroom in the presence of respondent and a bailiff. During her testimony, debtor maintained that she had never signed said contract. As a result, the court was presented with conflicting testimony as to the issue of debtor's signature.

The fee for respondent's work on debtor's domestic relations case during January of 2001 totaled exactly $700.00, which balance was satisfied with debtor's aforementioned retainer. Respondent's March invoice billed hours expended by respondent on March 6, and March 13, 2001, in the amount of $122.50. That balance was later paid by debtor. At that point, debtor had fulfilled all of her payment obligations to Thanos in reference to debts incurred prior to the Bankruptcy filing.

The remaining debts at issue were incurred by debtor from May 3, 2001 to July 24, 2001. The hours respondent billed in May through July of 2001, with a $600.00 deduction for a payment made by debtor in June, totaled $1,552.50.

In an effort to collect said debt, respondent brought an action against debtor in the Lake Circuit Court, Crown Point,

Indiana. Respondent was awarded default judgment in the amount of $3,289.00 on September 21, 2001.[1] The judgment breaks down as follows: $1,552.50 representing unpaid legal fees for hours expended from May 3, 2001 to July 24, 2001; $497.00 in estimated costs as allowed in Indiana small claims courts; $39.00 in court costs, and $1,200 in attorney fees for the collection process as awarded by the presiding judge pursuant to paragraph 16 of the Attorney Fee Contract.[2]

## – DISCUSSION –

Before an analysis of whether the debt at issue is a pre– or post-petition obligation can proceed, two preliminary issues as to the validity of the fee contract must be addressed. First, there is conflicting testimony as to debtor's signature on the fee contract. Debtor denies having ever signed the document, while respondent maintains she witnessed debtor's signature. Credibility of testimony is an issue over which the court, in the absence of a jury, shall be the arbiter. Having carefully considered the testimony provided, documents submitted, and inferences which may be drawn therefrom, the undersigned finds respondent's testimony more credible as to the signature issue. Therefore, respondent's testimony as a witness of debtor's signature on the contract is dispositive.

 The second preliminary issue involves the affect of debtor's failure to sign the fee contract until nearly five months

---

1. Respondent filed the complaint against debtor seeking fees for services rendered on or about August 15, 2001, which was subsequent to the July 24, 2001 Final Decree issued by this court closing debtor's bankruptcy case. Further, when debtor filed her petition on March 27, 2001, respondent was not listed as a creditor on any schedule and did not receive notice of the filing. Therefore, sanctionable activity pursuant to § 362's automatic stay provision is not implicated here.

2. Paragraph 16 of the Attorney Fee Contract states, in pertinent part, "[t]hat should the CLIENT be in default ... or should the ATTORNEY be otherwise required to bring suit or otherwise devote time attempting to collect the amounts due to the attorney under this agreement, the CLIENT shall also be responsible for the ATTORNEY'S court costs and reasonable attorney fees, including payment of the attorney's normal hourly rates ... if the ATTORNEY represents herself."

after respondent first undertook the representation. Pursuant to the common law of Indiana, "the validity of a contract is not dependent upon signature of the parties, unless such is made a condition of the agreement." *State v. Daily Express Inc.*, 465 N.E.2d 764, 767 (1984) (*citing* 6 I.L.E. *Contracts* § 53 (1958); *Parrish v. Terre Haute Savings Bank*, 431 N.E.2d 132 (1982); *Seco Chemicals, Inc., v. Stewart*, 169 Ind.App. 624, 349 N.E.2d 733 (1976)). There is no provision in the fee contract indicating that the agreement between debtor and respondent was conditioned upon either's signature on the document.

■ Although the absence of a signature will not defeat the validity of a contract, "some form of assent to the terms is necessary." *Daily Express*, 465 N.E.2d at 767. Assent may be manifested by a party's conduct. *Id* (*citing Herald Telephone v. Fatouros*, 431 N.E.2d 171 (1982)). Beginning January 9, 2001, continuing through June of 2001, when debtor ultimately signed the fee contract, debtor had accepted the benefit of respondent's work on her case and was making payments, albeit infrequently, for those services. Such conduct amounts to a manifestation of debtor's assent to the terms of the fee contract.

■ Having established the validity of the fee contract, the discussion must turn to an analysis of whether respondent's claim represents a pre– or post-petition debt. The date upon which the petition is filed is a most crucial date as it determines which assets become a part of the bankruptcy estate pursuant to § 541(a), which debts will be discharged pursuant to § 727(b), and which creditors, if any, will be paid pursuant to § 726. Upon the filing of a voluntary petition under chapter 7, the order for relief is entered. 11 U.S.C. § 301. Section 727(b) of the Bankruptcy Code provides, in pertinent part, that "a discharge under subsection (a) of this section discharges the debtor from all *debts that arose before the date of the order for relief.*" 11 U.S.C. § 727(b) [emphasis added]. As a result of the above quoted language, chapter 7 discharge is effective only as to debts that arose pre-petition. Debts arising after the filing of the petition are not discharged. Therefore, resolution of the matter at hand requires a determination of when respondent's claim against debtor arose.

"Claim" is defined in the Code as:

(A) *right to payment,* whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a *right to payment,* whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured to unsecured;

11 U.S.C. § 101(4) (1982) [emphasis added].

■ The Third Circuit in *In re M. Frenville Co.,* examined the issue of when a claim arises in the context of the automatic stay provision of § 362. 744 F.2d 332, 336 (1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). As noted by the *Frenville* court, in determining when a claim arises "the threshold requirement of a claim must first be met— there must be a right to payment." *Frenville*, 744 F.2d at 336; 11 U.S.C. § 101(4)(A). Consequently, the critical issue in the present matter is when did respondent's right to payment for the legal services rendered arise. Although federal law determines which claims are cognizable pursuant to the Bankruptcy Code, the question of when a right to payment arises, absent overriding federal law, "is to be determined by reference to state law."

*Frenville*, 744 F.2d at 337 (*quoting Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)).

▮ The subject matter of the debt at issue is legal services performed by respondent from May 3, 2001 to July 24, 2001. Debtor failed to pay what was owed for those services. A cause of action for breach of contract accrues when the breach occurs. *Pennsylvania Co., v. Good*, 103 N.E. 672 (1913). Debtor's failure to pay respondent's fees breached the contract between the parties, which in turn created respondent's right to payment.[3] Further, the earliest point from which respondent's right to payment arose was debtor's failure to pay respondent for work respondent performed on May 3, 2001. Therefore, respondent's claim was clearly subsequent to debtor's March 27, 2001, chapter 7 filing.

▮ Debtor was permitted by this court's order dated June 11, 2003, to amend Schedule F to include the debt owed to respondent. However, having established that said debt is a post-petition obligation, the debt is not discharged under § 727(b). Bankruptcy protection is intended to give the debtor a "fresh start" free from the continuing costs of debts incurred prior to the filing, it is not meant "to insulate debtor from the costs of post-bankruptcy acts." *In re Sure–Snap Corp.*, 983 F.2d 1015 (11th Cir.1993).

We conclude in light of the foregoing that the debt at issue here arose post-petition. Reopening debtor's case for the purpose of amending Schedule F so that debtor may schedule Mary Thanos as a post-petition creditor would be an exercise in futility.

An appropriate order shall issue.

**3.** Paragraph 2 of the fee contract states, in relevant part, "[t]hat in consideration for services rendered and to be rendered, the

### ORDER OF COURT

AND NOW at Pittsburgh this **23rd** day of **October**, 2003, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that the Order of Court dated June 11, 2003, provisionally reopening debtor's case is **VACATED**. Debtor's motion to reopen her bankruptcy case will be and is **DENIED**. The debt that debtor wishes to add to amended Schedule F is a post-petition obligation and is **NOT DISCHARGED** by the Order of Discharge issued on July 10, 2001.

It is **SO ORDERED**.

CLIENT agrees to pay fees to be determined as follows: ..."