# United States Court of Appeals

## For the First Circuit

No. 06-2395

IN RE: JOHN GREGORY SKORICH,

Debtor.

_____

EDMOND J. FORD, TRUSTEE,

Plaintiff, Appellant,

v.

DONNA SKORICH,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro,  U.S. District Judge]

Before

Boudin, Chief Judge,

Campbell, Senior Circuit Judge,

and Howard, Circuit Judge.

Edmond J. Ford with whom Ford, Weaver & McDonald, P.A. was on brief for appellant.
Eleanor Wm. Dahar with whom Victor W. Dahar, P.A. was on brief for appellee.

March 30, 2007

**BOUDIN, <u>Chief Judge</u>.** On this appeal, state family law intersects with the federal bankruptcy statute. On May 14, 2003, Donna Skorich ("Skorich") filed a petition for divorce from J. Gregory Skorich ("the debtor") with the Portsmouth, New Hampshire, Family Court. Pursuant to N.H. Rev. Stat. Ann. § 458:16-b (2000), the Family Court issued an order restraining each party from disposing of any property belonging to either of them (subject to narrow exceptions). Under state law, this granted Skorich an equitable interest in the marital property subject to its later division by the court. <u>Bursey</u> v. <u>Town of Hudson</u>, 719 A.2d 577, 579 (N.H. 1998); N.H. Rev. Stat. Ann. § 458:16-a (2000).[1]

Among the property subject to allocation was jointly owned real estate in Rangeley, Maine. On June 24, 2004, the Family Court became aware of a pending sale of the Rangeley property, and it directed that the proceeds (approximately $300,000) be placed in an escrow account under the joint control of Skorich's and the debtor's respective divorce counsel. Apparently the court aimed to protect Skorich's potential interest in the property, given that (in the Family Court's words) the debtor had "violated almost every order that this Court has made" and had "concealed assets and

---

[1] The bankruptcy trustee says that <u>Bursey</u> holds only that a spouse has standing to protect legal title to marital property. But the New Hampshire Supreme Court described a spouse as having an "equitable interest" and a "legally protectable property interest" in marital property. <u>Bursey</u>, 719 A.2d at 579. She has standing to protect legal title <u>because</u> she has an equitable interest in the property.

-2-

diverted assets, and taken title to assets in the names of third parties."

Shortly thereafter, on July 9, 2004, the debtor filed a Chapter 7 bankruptcy petition. On September 8, 2004, the bankruptcy court granted Skorich relief from the automatic stay to allow her "to obtain a final divorce decree from the Family Court, which may include allocation of the couple's marital assets" but not their distribution unless approved by the bankruptcy court. On March 29, 2005, the Family Court issued its final decree which awarded Skorich the entire amount in the escrow account, and Skorich filed a motion with the bankruptcy court to obtain the escrowed funds awarded to her in the divorce.

The bankruptcy trustee ("the trustee") objected, contending that the debtor's share of the escrow funds was property of the debtor's estate subject to administration by the trustee. On October 19, 2005, the bankruptcy court issued a decision holding that under state law the debtor was divested of all legal title to the funds when they were placed in escrow, prior to his filing for bankruptcy, retaining only a contingent equitable interest in them subject to the Family Court's ultimate division of marital property. In re Skorich, 332 B.R. 77, 87 (Bankr. D.N.H. 2005) ("Skorich I").

Based on this decision, Skorich filed a motion for summary judgment with the bankruptcy court seeking a hand-over of

the escrowed funds. The trustee filed a cross-motion for summary judgment, on the ground that the transfer of the debtor's legal title to the escrow agents was a preferential transfer avoidable under section 547 of the Code, 11 U.S.C. § 547 (2000). Avoidance of the transfer would bring legal title to the sale proceeds back into the debtor's estate, and--according to Skorich I--the trustee's status as a hypothetical judicial lien creditor, 11 U.S.C. § 544(a), would enable him (based on state law) to cut off Skorich's contingent equitable interest in the debtor's share of the proceeds. Skorich I, 332 B.R. at 84.

The bankruptcy court ruled that the transfer to the escrow agent had not been for Skorich's benefit as "a creditor" nor was it on account of "an antecedent debt," two preconditions of section 547(b). Thus, the trustee could not avoid the transfer of legal title to the funds out of the debtor's estate; and, as the Family Court decree gave full title to the escrow account to Skorich, the funds belonged to her. Ford v. Skorich, 337 B.R. 441, 447 (Bankr. D.N.H. 2006) ("Skorich II"). The district court affirmed, 2006 WL 2482694 (D.N.H. 2006).

The trustee now appeals to contest the ruling under section 547--an issue of law that we review de novo. Ganett v. Carp (In re Carp), 340 F.3d 15, 21 (1st Cir. 2003). The Bankruptcy Code's treatment of equitable interests relating to property is a subject of great difficulty, and by coincidence another such case

is also before us, <u>Abboud</u> v. <u>The Ground Round, Inc.</u> <u>(In re Ground Round)</u>, No. 06-9002 (1st Cir.), and is decided today. The process of unraveling the Bankruptcy Code's obscurities in regard to such interests is far from over.

The Bankruptcy Code transfers to the estate any interest in property--whether legal or equitable--held by the filer at the time of bankruptcy (subject to narrow exceptions not pertinent here). 11 U.S.C. § 541(a)(1). Once the divorce petition was filed, the debtor and Skorich each held shared legal title and (because of the divorce petition) an individual contingent equitable interest in all of the proceeds from the house sale. The escrowing divested both parties of legal title to the funds, but not their equitable interests.

The trustee inherited the debtor's contingent equitable interest but that contingency never matured; instead, the contingency vanished when (after the lifting of the automatic stay) the Family Court awarded all of the escrowed funds to Skorich. If this were the end of the matter, Skorich would arguably have clean title to the fund--full equitable ownership and a right to title from the escrow agents--and third parties holding claims against the debtor would have to look to other assets.

However, section 547 allows the trustee to "avoid" preferential transfers. If this provision applied to the transfer of legal title from the debtor and Skorich to the escrow agents,

Skorich's claim to the proceeds--more precisely, to the debtor's presumptive half share--might begin to unravel. True, Skorich (and the debtor) would each retain a contingent equitable interest in the whole and only Skorich's interest would have matured. But under section 544, the strong-arm power of the trustee could arguably be used to cut off Skorich's equitable interest in the debtor's presumptive share of the proceeds.[2]

This brings us to section 547, which allows the trustee to avoid a transfer of a debtor's interest in property made within 90 days before the filing of the bankruptcy petition if, among other things, the transfer was "to or for the benefit of a creditor" and "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b) (emphasis added). In the ordinary sense, Skorich was not a creditor of her husband as to the property: they owned it together,

---

[2]Courts disagree as to whether section 541(d) protects a third party against having her equitable interest in property cut off by the trustee's strong-arm power when the debtor holds only bare legal title to the property. Compare In re Quality Holstein Leasing, 752 F.2d 1009, 1013 (5th Cir. 1985), with Belisle v. Plunkett, 877 F.2d 512, 515 (7th Cir.), cert. denied sub nom, 493 U.S. 893 (1989); see also 11 U.S.C. § 541(d). We assume arguendo that section 544(a) does, where state law so provides, clothe the trustee with the power to extinguish the equitable interest.

Whether New Hampshire law would allow a hypothetical judgment lien creditor to take ahead of Skorich could be debated, but the Bankruptcy Court held that a judgment lien creditor would indeed take ahead of Skorich. Skorich I,332 B.R. at 84. Such a a result is at least colorable, cf. Charter Fin. Inc. v. Aurora Graphics, Inc. (In re Jasper-O'Neil), 816 A.2d 989, 991 (N.H. 2003); Rodman v. Young, 679 A.2d 1150, 1152 (N.H. 1996), and Skorich has not contested it.

subject to the Family Court's power to allocate it in a divorce proceeding.

Nevertheless, the Bankruptcy Code has its own technical definitions. A "creditor" is any "entity that has a claim against the debtor" that arose before the bankruptcy petition was filed, 11 U.S.C. § 101(10); a "debt means liability on a claim," id. § 101(12); and a "claim" is a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Id. § 101(5).

Skorich says that she had no "claim" as to the debtor's presumptive share of the proceeds for two reasons. The first is that at the time of the bankruptcy filing--normally the critical date for identifying claims by creditors in bankruptcy, 11 U.S.C. § 101(10)--no division of property had yet occurred; the second is that her equitable interest in the debtor's share was not in any event a "claim" under either part of section 101(5)'s definition.

If the equitable interest otherwise constituted a claim within the meaning of the definition, the fact that it was contingent and unmatured at the time of the bankruptcy petition

-7-

would not be a bar to treating it as a claim.  Both halves of section 101(5)'s definition explicitly say that it does not matter if a claim is contingent and unmatured.  Although a few cases lean in Skorich's direction, our own precedent is in the trustee's favor on this issue.[3]

Skorich's better argument--and the basis for the decisions by the bankruptcy and district courts below--is that her equitable interest in marital property is not a "claim" at all under section 101(5), because it is neither a "right to payment" (subsection (A)) nor a "right to an equitable remedy for breach of performance" (subsection (B)).  See In re Compagnone, 239 B.R. 841, 845 (Bankr. D. Mass. 1999); In re Perry, 131 B.R. 763, 766-67 (Bankr. D. Mass. 1991).

We start with subsection (A).  Just prior to the escrow transfer, Skorich had shared legal title to the proceeds and a contingent equitable interest in the whole fund, but this was not a contingent right to payment from the debtor, whether out of his property share or otherwise; rather, it was an interest in property obtained upon the filing of the divorce petition by virtue of her status as spouse.  Bursey, 719 A.2d at 579.

---

[3]Compare Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 8 (1st Cir. 1992), with Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.), 744 F.2d 332, 337 (3d Cir. 1984), cert. denied, 469 U.S. 1160 (1985).

-8-

The trustee cites numerous cases purporting to establish that a spouse's interest relating to marital property is inevitably a "claim" under section 101(5); but in reality, courts take different views on this issue, seemingly affected in part by how different state laws treat marital interests.[4] Nor does the fact that the Rangeley property was liquidated change the analysis. Cf. In re Brown, 168 B.R. 331, 334-35 (Bankr. N.D. Ill. 1994).

The trustee also says that the divorce court could have awarded Skorich a monetary sum payable by the debtor in place of any interest in the real property or sale proceeds; that would arguably be a right to payment under subsection (A). See In re Emelity, 251 B.R. 151, 154 (Bankr. S.D. Cal. 2000). But here, the divorce court did not award Skorich a right to payment in lieu of an equitable division of property; instead, the divorce court matured Skorich's equitable interest in the marital property.

Subsection (B) is even more clearly inapplicable. How that subsection should be read is the subject of much controversy, but by its terms it applies only to equitable remedies "for breach of performance" where money is a substitute remedy. Even if

---

[4]Compare, e.g., In re White, 212 B.R. 979, 982-83 (10th Cir. BAP 1997) (equitable interest vests when divorce petition is filed); In re Roberge, 188 B.R. 366, 369 (E.D. Va. 1995) (same), with, e.g., Ara v. Anjum (In re Anjum), 288 B.R. 72, 76 (Bankr. S.D.N.Y. 2003) (no interest until divorce award); In re Polliard, 152 B.R. 51, 53-54 (W.D. Pa. 1993); Perlow v. Perlow, 128 B.R. 412, 415 (E.D.N.C. 1991); In re Palmer, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987).

division of marital property were regarded as an equitable <u>remedy</u>, no breach of performance--for example, for failure to perform a contract--is involved in the present case and only equitable remedies for breach of performance are potentially claims under section 101(5). <u>See</u> <u>In re Perry</u>, 131 B.R. at 767.

The trustee also invokes section 102(2) which provides–as a rule of construction--that "'claim against the debtor' [the subject of section 101(5)] includes claim against property of the debtor." 11 U.S.C. § 102(2). The trustee reads this provision as if it made all claims to third party property in the hands of the debtor "claims" against the estate. But this would virtually wipe out section 101(5)(B)'s limitations and is contrary to the limited role that Congress intended for its "rule of construction."

As its legislative history makes plain, section 102(2) does nothing more than clarify that <u>claims to money</u> payable out of the debtor's property are to be treated no differently than claims to money enforceable against the debtor personally. Thus, under this provision a non-recourse loan, being a claim for money, is a claim against the estate even though "the creditor's only rights are against property of the debtor." S. Rep. No. 95-989, at 28 (1978); <u>see</u> <u>Johnson</u> v. <u>Home State Bank</u>, 501 U.S. 78, 84 (1991). Skorich has no such money claim against the debtor; her <u>only</u> interest is an equitable interest to the fund.

The trustee also says that our decision in <u>Davis</u> v. <u>Cox</u>, 356 F.3d 76 (1st Cir. 2004), assumed that an equitable interest in marital property constituted a "claim" under section 101(5). <u>Davis</u> held that Maine law would recognize a constructive trust on the wife's part in an IRA nominally owned by her debtor husband, <u>id.</u> at 89, and that certain funds held in escrow were not property of the estate under section 541 and were permissibly awarded to the wife, <u>id.</u> at 93-94.

Thus, if anything, <u>Davis</u> is generally helpful to Skorich on several points and the issue that principally worried the court in <u>Davis</u>--just what equitable interest Maine courts would recognize in marital property--is resolved by New Hampshire case law in Skorich's favor. <u>See</u> <u>Bursey</u>, 719 A.2d at 579. Although the bankruptcy court in <u>Davis</u> proceeded on the assumption that the trustee attributes to us, our decision adopted no such holding, <u>see</u> <u>id.</u> at 83 n.5, and did not even mention section 101(5).

Lastly, the trustee says that allowing Skorich to claim the escrow fund undercuts the section 547 policies of equal treatment of creditors and of defeating preferences. By recognizing a property interest of non-debtor spouses not dischargeable in bankruptcy, the trustee says we will encourage a debtor spouse to favor a non-debtor spouse over bankruptcy creditors, in order to satisfy a nondischargeable obligation that might otherwise remain unsatisfied.

-11-

This litigation is far from section 547's heartland: it is certainly not a case of the debtor smuggling out property to prefer one creditor to another. Further, equal treatment is hardly the only interest reflected in the Code's many compromises as to secured interests, priorities, and preference avoidance provisions. Nothing in the outcome in this case is an assault on the main thrust of section 547.

No single case can sort out--let alone answer--the array of adjacent questions posed where divorce and bankruptcy overlap or smooth out the many wrinkles in the precedents. Modesty counsels a focus upon specific provisions and individual facts. Having sought to trace the respective interests, we conclude that Skorich does not have a "claim" against the debtor as a "creditor"; nor was the transfer of legal title to the escrow agents "on account of antecedent debt." Section 547 therefore does not treat the transfer as an avoidable preference.

<u>Affirmed</u>.