PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

───────────────

No. 13-2175

───────────────

In re:  PAUL RUITENBERG, III,

Debtor

THOMAS J. ORR, Chapter 7 Trustee
for Paul Ruitenberg,

Appellant

───────────────

Appeal from the United States Bankruptcy Court
for the District of New Jersey
(B.C. No. 10-48639)
Bankruptcy Judge: Honorable Raymond T. Lyons

───────────────

Argued November 20, 2013

Before:  AMBRO, and SMITH, Circuit Judges
and O'CONNOR,[*] Associate Justice (Ret.)

─────────────────

[*] Honorable Sandra Day O'Connor, Associate Justice (Ret.)
for the Supreme Court of the United States, sitting by
designation.

(Opinion filed March 13, 2014)

Graig P. Corveleyn, Esquire
Andrea Dobin, Esquire   (Argued)
Trenk, DiPasquale, Della Fera & Sodono
427 Riverview Plaza
Trenton, NJ   08611

      Counsel for Appellant

Erin J. Kennedy, Esquire  (Argued)
Forman, Holt, Eliades & Youngman
80 Route 4 East, Suite 290
Paramus, NJ   07652

      Counsel for Appellee

————————————

OPINION  OF  THE  COURT

————————————

AMBRO, <u>Circuit Judge</u>

We decide whether Candace Ruitenberg's interest in an equitable share of marital property pending her divorce from Paul Ruitenberg, III is a pre-petition "claim" against Paul's bankruptcy estate.  The issue has divided Bankruptcy Courts in our Circuit.

Paul filed for bankruptcy under Chapter 7 of the Bankruptcy Code, and Thomas J. Orr was appointed as the Trustee of the bankruptcy estate.  Before that filing, Paul and Candace were in divorce proceedings in New Jersey state

court. No final judgment of divorce existed when Paul filed his bankruptcy petition nor was there a division of marital assets. Based on an estimate of her expected share of marital assets, Candace filed a timely proof of claim for $577,935 (the "Claim") against Paul's bankruptcy estate.[1] (Candace initially sought priority status for the Claim under 11 U.S.C. § 507(a)(1)(A) and (B), but later conceded that the Claim, even if pre-petition, is not entitled to priority as a domestic support obligation.)

Orr sought to expunge the Claim. He argued that Candace's interest in equitably dividing the marital property in Paul's bankruptcy estate was not a "claim" for purposes of § 101(5) of the Bankruptcy Code, 11 U.S.C. § 101(5), because the New Jersey court had not entered a final divorce decree before Paul filed for bankruptcy. Candace's Chapter 7 Trustee, Barbara Edwards, opposed the motion to expunge. She argued that Candace had a contingent claim for equitable distribution of marital property, and that was a pre-petition claim against Paul's estate.

The parties' briefs did not detail the marital property at issue between Paul and Candace, nor why it mattered that the Claim be classified as pre- or post-petition. In general, post-petition claims for equitable distribution are not discharged. *In re Ruitenberg*, 469 B.R. 203, 206 (Bankr. D.N.J. 2012) (citations omitted). And, as acknowledged by the parties, under the changes implemented by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 215(3), 119 Stat. 23 (2005), equitable distribution claims are nondischargeable in Chapter 7. *See* 11 U.S.C. § 523(a)(15) (excepting from

---

[1] Candace later filed her own Chapter 7 petition, and disclosed the Claim as an asset of unknown value in her estate.

3

discharge any liability on a claim "to a spouse [or] former spouse . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record"); *see also Ruitenberg*, 469 B.R. at 208; 4 Collier on Bankruptcy (16th ed. Supp. 2013) ¶ 523.23 ("Section 523(a)(15) now provides, unqualifiedly, that a property settlement obligation encompassed by section 523(a)(15) is nondischargeable.").

The record before the Bankruptcy Court and the parties' statements at oral argument shed some light on the practical distinction between a pre- and a post- petition claim in this case. Candace's Claim was apparently premised on her stake in a partnership that was legally titled in Paul's name and hence passed to his bankruptcy estate; it would likely be distributed between Paul and Candace as shared marital property in connection with any divorce decree. *See* N.J. Stat. Ann. § 2A:34-23.1 ("It shall be a rebuttable presumption that each party made a substantial financial or nonfinancial contribution to the acquisition of income and property [during the marriage]."). Thus, through the Claim Candace sought her anticipated share of marital property that was in the hands of Trustee Orr in Paul's estate. If the Claim is classified as pre-petition, Candace would share in any distribution of the bankruptcy estate as a general unsecured creditor. If, however, the Claim is deemed post-petition, Candace will be left to collect on her interest outside of bankruptcy with the fear that there will be less left after Paul's Chapter 7 liquidation for that Claim than if it shared in his estate as a pre-petition claim.

Bankruptcy Judge Lyons denied Orr's motion and agreed with Edwards that, under more-current decisions of our Court, "the pending claim for equitable distribution against [Paul's] bankruptcy estate arose prepetition and must

4

be allowed." *In re Ruitenberg*, 469 B.R. at 204. Orr timely appealed the Bankruptcy Court's order, and the District Court certified the case for direct appeal to our Court.

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). We have jurisdiction over this direct appeal pursuant to 28 U.S.C. § 158(d)(2)(A). We review the Bankruptcy Court's findings for clear error, and apply plenary review to its conclusions of law. *In re Handel*, 570 F.3d 140, 141 (3d Cir. 2009). We note that Orr does not challenge any of the factual findings of the Bankruptcy Court. Rather, the parties agree that this appeal presents a pure question of law. *See* Appellant's Br. at 6; Appellee's Br. at 1.

Deciding when an interest in the equitable distribution of marital assets in a divorce proceeding becomes a claim against the bankruptcy estate of one of the spouses begins with what the Bankruptcy Code defines as a "claim." It is in relevant part a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). Even if no final judgment of divorce existed for Candace and Paul when he entered bankruptcy, her interest was, at the least, unliquidated and contingent on a final decree apportioning marital property, perhaps unmatured, and likely disputed. But, no matter, it literally is a "claim" under § 101(5).[2]

---

[2] A case cited by neither party—*In re Skorich*, 482 F.3d 21 (1st Cir. 2007)—deserves our recognition and comment. The First Circuit Court held that a pre-petition order of a New Hampshire Family Court transferring proceeds from the sale of marital property to an escrow account was not a voidable

5

Our recent analysis of § 101(5) in *JELD-WEN, Inc. v. Van Brunt (In re Grossman's)*, 607 F.3d 114 (3d Cir. 2010), supports this view. There we dealt with whether an asbestos-related tort action against a home improvement retailer arose as a "claim" before the retailer's bankruptcy filing. If so, bankruptcy may discharge that claim even though the injury arose (and thus the tort action accrued) after the bankruptcy filing. *Id.* at 117. We noted that both Congress and the Supreme Court have instructed that a "claim" under the Bankruptcy Code be given the broadest possible definition. *Id.* at 121 (citing H.R. Rep. No. 95-595, at 309 (1977) and *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S 293, 302 (2003)). In the specific tort action at issue in *Grossman's*, we held that "a 'claim' arises when an individual is exposed pre-

---

preference under § 547 of the Bankruptcy Code with respect to the bankruptcy estate of the husband. See *id.* at 27. In reaching that result, the First Circuit concluded, among other things, that the former wife did "not have a 'claim' against the [former husband] as a 'creditor'," *id.* at 27, an element needed to qualify as a preference. The rationale for that statement was that the former wife's "equitable interest in marital property is not a 'claim' under [Code] section 101(5), because it is neither a 'right to payment' (subsection (A)) nor a 'right to an equitable remedy for breach of performance' (subsection (B))." *Id.* at 25. Though a forceful argument exists that a court granting to a spouse an equitable interest in the cash proceeds of the sale of marital property is a right to payment constituting a claim under § 101(5), *Skorich* dealt with a state court placing marital property in escrow prior to one spouse's bankruptcy, and in any event the case concerned whether that court-ordered transfer was a voidable preference. *Id.* at 23-24. Our case involves neither an escrow nor a preference claim.

6

petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under [§ 101(5)]." *Id.* at 125. In other words, a lawsuit based on conduct (or exposure) that occurred before the bankruptcy filing yields a pre-petition claim even though the cause of action did not accrue until the injury manifested sometime after the bankruptcy filing.

In *Grossman's* we overruled an earlier test—known as the "accrual test"—set out in *Avellino & Bienes v. M. Frenville Co. (In re Frenville)*, 744 F.2d 332 (3d Cir. 1984). Under that test, a claim would not exist until a right to payment arose (or accrued) under state law. *Grossman's*, 607 F.3d at 119. After weighing criticisms of the test by our sister circuits and commentators, we concluded that the accrual test interpreted § 101(5)'s definition too narrowly because "a 'claim' can exist under the Code before a right to payment exists under state law." *Id* at 121. Specifically, the accrual test "fail[ed] to give sufficient weight to the words modifying [the 'right to payment']: 'contingent,' 'unmatured,' and 'unliquidated.'" *Id.* Thus our holding in *Grossman's* expanded our Court's interpretation of the definition of a "claim" under § 101(5) of the Bankruptcy Code. Candace's interest in marital property falls well within this expanded definition.

Orr argues that *Grossman's* expansion of the definition of a "claim" should be read narrowly to apply only to tort-related claims and that we should continue to apply *Frenville* and the accrual test in our case. He asserts that, per the accrual test, Candace has a post-petition claim because under New Jersey law "a spouse's right to share in marital property by virtue of equitable distribution arises when 'a judgment of divorce . . . is entered.'" *Carr v. Carr*, 576 A.2d 872, 875 (N.J. 1990) (quoting N.J. Stat. Ann. § 2A:34-23). Orr also relies on two pre-*Grossman's* bankruptcy cases that held that

7

claims based on equitable distribution in New Jersey do not exist until a judgment of divorce is entered—*In re Howell*, 311 B.R. 173 (Bankr. D.N.J. 2004) (a case decided by Judge Lyons), and *In re Berlingeri*, 246 B.R. 196 (Bankr. D.N.J. 2000). But contrary to Orr's contention, both cases relied on *Frenville*'s accrual test. *See Howell*, 311 B.R. at 176; *Berlingeri*, 246 B.R. at 199. As explained by Judge Lyons, *Ruitenberg*, 469 B.R. at 206-07, and as we explain below, the accrual test was abandoned by *Grossman's* even in this context.

Although our Court's formulation of the test in *Grossman's* was tailored to claims rooted in a common law tort action, when we overruled *Frenville* we spoke more broadly of the problems with the accrual test. As mentioned above, *Grossman's* points out that Congress sought to adopt the *"broadest possible definition"* of the term "claim" in § 101(5), and we recognized that *Frenville* "impose[d] too narrow an interpretation of a 'claim' under the Bankruptcy Code." 607 F.3d at 121 (emphasis in original). Ultimately, we acknowledged in *Grossman's* that the accrual test was not consistent with the language of § 101(5), which includes even a right to payment that is "contingent," "unmatured," or "unliquidated." *Id.* Thus, though the test in *Grossman's* does not directly apply to claims like Candace's for equitable distribution (because there is no obvious pre-petition product or specific conduct at issue), the underlying rationale of the case and the language of § 101(5) favor a broader rejection of the *Frenville* accrual test.

Allowing Candace a pre-petition claim here also comports with a related but distinct issue we recently decided: whether a debtor who is pursuing equitable distribution of marital property in a divorce proceeding must disclose that interest in his or her own bankruptcy filing if a final judgment of divorce is not yet entered. *See In re Kane*, 628 F.3d 631,

8

641 (3d Cir. 2010). We observed that the debtor, Ms. Kane, "had an interest in an equitable distribution of marital property—namely, by virtue of being married to Mr. Kane, and by virtue of having initiated a divorce action in which she was seeking equitable distribution . . . ." *Id.* (emphasis omitted). Therefore, under the literal words of § 541(a)(1) of the Bankruptcy Code ("[p]roperty of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case"), "Ms. Kane's bankruptcy estate included as an 'equitable interest in property[]' the possibility that the [domestic relations court] would, at some point in the future, award her equitable distribution of marital assets, or that she and Mr. Kane would arrive at a property settlement that transferred the legal title of marital assets to her." *Kane*, 628 F.3d at 641 (emphases omitted). Thus we held that Ms. Kane was required to disclose that interest in her bankruptcy filing. Our result in the case before us, when combined with the result in *Kane*, creates a symmetry under the Code that is sensible: a debtor who has already begun divorce proceedings must disclose any expected share of his or her marital property as an asset of the estate under § 541, and, conversely, a non-debtor spouse may file a pre-petition claim against the estate based on his or her expected equitable share of the marital property even if no final judgment of divorce existed at the time of the bankruptcy filing.

In attempting to distinguish *Kane*, Orr places undue weight on the particular language we used in characterizing Ms. Kane as having an "interest" in the couple's marital property, but not a "right" to it. *See* Appellant's Br. at 18 (citing *Kane*, 628 F.3d at 642). But, as noted, in *Kane* we analyzed an entirely distinct section of the Code—"[p]roperty of the estate" under § 541—that bears little similarity in language or structure to the definition of a "claim" under § 101(5). *Kane* applies to Candace's own bankruptcy—her right to equitable distribution of marital assets is property of

her bankruptcy estate—and not to whether she has a claim to marital property in the custody of Orr as Paul's bankruptcy Trustee.

We also reject Orr's contention that allowing a pre-petition claim in this case conflicts with New Jersey law and thereby disregards the rule of *Butner v. United States*, 440 U.S. 48, 55 (1979). Even though a state court in New Jersey may not order equitable distribution until a judgment of divorce has been entered, *see Carr*, 576 A.2d at 875, courts in the State recognize that certain rights to the marital property arise even before an order is entered. S*ee, e.g.*, *id.* at 878 ("[C]ognizable rights of spouses in marital property . . . arise from the marital relationship in which, presumptively, both parties contribute in varied ways to the creation, acquisition and preservation of their familial property and, thereby, secure a protectable interest to share, possess, and enjoy that property."); *Vander Weert v. Vander Weert*, 700 A.2d 894, 899 (N.J. App. Ct. 1997) ("[O]nce the divorce complaint is filed, the marital estate is, not technically but in a practical sense, *in custodia legis* . . . [and] significant equities in the then-distributable marital estate are thereby created . . . ."). Thus allowing a pre-petition claim follows New Jersey law that Candace holds "a protectable interest to share" in the couple's marital property. *Carr*, 576 A.2d at 878. That interest simply remains unliquidated and contingent until the domestic relations court enters a final decree of divorce and accompanying order for equitable distribution.

Finally, we note that, as a practical matter, allowing Candace a pre-petition claim does not raise the type of due process issue that concerned us in *Grossman's*. *See Grossman's*, 607 F.3d at 126 ("Th[e] issue [of inadequate notice] has arisen starkly in the situation presented by persons with asbestos injuries that are not manifested until years or even decades after exposure."). At the time Paul filed for

10

Chapter 7 bankruptcy in December 2010, both he and Candace were well aware that under New Jersey law Candace would be entitled to some share of the marital property titled in Paul's name. Hence we have even less reason here to withhold a pre-petition claim from Candace for any alleged doubt of due process. Nor are we persuaded, as Orr contends, that our holding will be "unwieldy" to apply. Filing for divorce is the logical time when there should exist under the Bankruptcy Code a "claim" based on equitable distribution of marital property.

\* \* \* \* \*

Although Candace did not have for her marital assets an equitable distribution decree in hand at the time Paul filed for bankruptcy, under *Grossman's* "our focus should not be on when the claim accrues . . . but whether a claim exists." *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010) (citing *Grossman's*, 607 F.3d at 121). Given the Bankruptcy Code's expansive definition of a "claim," we hold that a non-debtor spouse has an allowable pre-petition claim against the debtor's bankruptcy estate for equitable distribution of marital property when the parties are in divorce proceedings before the bankruptcy petition is filed. "[T]he contingent nature of the right to payment does not change the fact that the right to payment exists . . . and thereby constitutes a 'claim' for purposes of § 101(5)." *Rodriguez*, 629 F.3d at 142. Accordingly, we affirm the well-reasoned decision of Bankruptcy Judge Lyons overruling Orr's objection and allowing Candace's Claim.

11