# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEGGY S. ROACH, a/k/a PEGGY S. FITZSTEPHENS,

Plaintiff-Appellee,

v

DANIEL J. FITZSTEPHENS,

Defendant-Appellant.

UNPUBLISHED
May 12, 2016

No. 324146
Van Buren Circuit Court
LC No. 13-630647-CZ

---

Before: MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order denying his motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition in favor of plaintiff pursuant to MCR 2.116(I)(2). We affirm.

Plaintiff and defendant married on August 27, 1983. Subsequently, plaintiff filed for divorce, and a judgment of divorce was entered on October 30, 2006. Prior to the entry of the divorce judgment, the parties executed a property settlement agreement dated October 19, 2006. According to the settlement agreement and the divorce judgment, the settlement agreement was incorporated but not merged into the divorce judgment.[1] Under the terms of the settlement agreement, defendant was awarded the marital home, with plaintiff being awarded $13,500 for her interest in the property, which payment obligation was secured by a mortgage on the home. Defendant was to pay plaintiff the $13,500 in 24 monthly installments of $613, subject to interest and late fees.

The settlement agreement further provided that defendant was awarded the parties' landscaping and tree farm business, which encompassed both real and personal property, with plaintiff being awarded $64,000 for her interest in the business, which payment obligation was secured by a lien on the business's real estate.[2] Defendant was to pay plaintiff the $64,000 pursuant to annual installments, starting with an initial payment to be made no later than January 5, 2007,

---

[1] We shall discuss below the meaning of this language.

[2] Defendant was made responsible for any and all existing debt associated with the marital home and the business.

-1-

followed by six equal annual payments, subject to interest and late fees. The settlement agreement and the divorce judgment provided that plaintiff was awarded 100 percent of defendant's defined contribution plan that accrued during the marriage. The settlement agreement indicated that while plaintiff was awarded 100 percent of defendant's defined contribution plan, 50 percent of the award was to be immediately withdrawn by plaintiff and then applied, after income taxes and a car debt were paid, toward the first installment payment owed by defendant to plaintiff relative to division of the landscaping and tree farm business.[3] Additionally, the settlement agreement and the divorce judgment provided that plaintiff was awarded 50 percent of defendant's defined benefit plan that accrued during the marriage.[4] The settlement agreement indicated that three years after entry of the judgment of divorce, an amended QDRO "shall enter" awarding plaintiff 100 percent "of said account," with plaintiff to immediately withdraw the funds, pay income taxes, and then "apply the remaining balance to the indebtedness on the [landscaping and tree farm business]," i.e., the $64,000 debt.[5] This provision did not state whether it pertained to the defined benefit plan or the defined contribution plan.[6] Finally, the divorce judgment awarded plaintiff $880 per month in spousal support running from July 1, 2007, to June 1, 2014, with additional spousal support being reserved for purposes of enforcement of defendant's obligations to pay the $13,500 and $64,000 relative to the house and business.

With respect to the $13,500 home-related award, defendant made the $613 monthly payments for several years, but eventually stopped, owing a balance of approximately $3,000. With respect to the $64,000 business-related award, defendant received credit for an initial payment of approximately $10,000, which, it appears, came from, as contemplated by the settlement agreement, plaintiff's liquidation of 50 percent of the 100 percent, marriage-accrued share of defendant's defined contribution plan that was awarded to plaintiff. No more payments were made on this debt. There is no dispute that an amended QDRO was never entered.

Bankruptcy proceedings are relevant to this case and, unfortunately, the record below was not very well developed by the parties with respect to documentary evidence and arguments

---

[3] The settlement agreement reflected that, "in principal [sic]," the defined contribution plan was being divided equally between the parties, as defendant's half, although being awarded to plaintiff, was to be applied to paying the initial installment on defendant's $64,000 debt.

[4] The division of the defined contribution and defined benefit plans was to be made pursuant to Qualified Domestic Relations Orders (QDROs); there are no QDROs in the record. The settlement agreement stated that both retirement plans were held by defendant through his employer Pfizer.

[5] Immediately following the quoted language about applying the withdrawn retirement funds to the remaining balance, the settlement agreement stated, "A QDRO shall be entered by submission of amended QDRO under the 7-day Rule. (This payment shall be applied to the next annual payment due.) No additional QDRO shall enter if indebtedness . . . is paid in full."

[6] We appreciate that most, but not all, defined benefit plans do not allow early withdrawals. If the parties were alluding to the defined contribution plan, 100 percent of which was awarded to plaintiff as accrued during the marriage, perhaps they were speaking of pre-marriage amounts added to amounts that would accrue during the three years following entry of the divorce judgment. We do not know defendant's retirement status.

pertaining to the bankruptcy proceedings, as well as to ambiguities in the settlement agreement and divorce judgment. It appears that in December 2005 plaintiff and defendant jointly filed for bankruptcy protection under title 11 of the United States Code, the Bankruptcy Code, and more particularly chapter 13, 11 USC 1301 *et seq.*, in the United States Bankruptcy Court for the Western District of Michigan.[7] This was prior to entry of the judgment of divorce. The bankruptcy petition was dismissed on October 10, 2008, nearly two years after the divorce was finalized, "for failure to pay filing fee."

In November 2008, defendant filed his own chapter 13 bankruptcy petition. In July 2009, the case was converted to a chapter 7 bankruptcy proceeding, 11 USC 701 *et seq.* (liquidation). In April 2010, defendant obtained a debtor discharge from the bankruptcy court, 11 USC 727, and the bankruptcy case was closed in May 2010.[8] In the instant case, defendant submitted various bankruptcy schedules, which, as best we can glean, were associated with defendant's chapter 13 filing in November 2008. Those schedules failed to list plaintiff as a creditor, secured or unsecured, and failed to identify defendant's debts arising out of the settlement agreement and divorce judgment. Schedule A concerned real property and identified the former marital home and the land used in the business.[9] Schedule C, which addressed property claimed as exempt, listed $34,160 in a

---

[7] "Chapter 13 authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan approved by the bankruptcy court." *Marrama v Citizens Bank of Massachusetts*, 549 US 365, 367; 127 S Ct 1105; 166 L Ed 2d 956 (2007). Chapter 13 allows a relatively small debtor to retain property and reschedule payment obligations to creditors. *In re Glance*, 487 F3d 317, 319 (CA 6, 2007).

[8] In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 693; 762 NW2d 529 (2008), this Court noted some basic chapter 7 principles:

> In a chapter 7 bankruptcy, the trustee marshals the assets of the debtor, liquidates the estate, and distributes the proceeds, if any, to the creditors. 11 USC 721 *et seq.* (subchapter II of chapter 7–collection, liquidation, and distribution of the estate); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 BR 207, 218 (D Del, 1995). The Federal Rules of Bankruptcy Procedure (FRBP) address the closing of a chapter 7 liquidation case, providing:

> "If in a chapter 7 . . . case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered. [FRBP 5009.]"

> "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 USC 350(a). [Ellipsis in original.]

[9] In regard to the house, defendant showed a value of $185,000, subject to a secured claim in the amount of $173,533. With respect to the business land, defendant showed a value of $175,000, subject to a secured claim in the amount of $98,000.

401(k), which necessarily pertained to the defined contribution plan,[10] and $7,180 relative to the business real estate. There is no mention of any defined benefit plan, nor any indication that the defined benefit plan was part of the bankruptcy estate.[11] In his appellate brief, defendant asserts that the assets of the bankruptcy estate, including his "retirement accounts" and the business property, both real and personal, "were liquidated and the proceeds distributed to the secured creditors[.]" At the summary disposition hearing, counsel for defendant stated:

> All of the assets to which [plaintiff] had a claim in prior to . . . [defendant] filing bankruptcy became assets of the [bankruptcy] estate and to a large extent were liquidated [for] payment of the debts of the estate . . . and no longer existed after the time of discharge in April of 2010.

The lower court record contains *no documentary evidence* establishing what property was actually liquidated, determined to be exempt, or was otherwise not included in the bankruptcy estate for purposes of the chapter 7 bankruptcy proceedings.

On October 3, 2013, a circuit court judge denied plaintiff's motion to enforce the judgment of divorce as to defendant's unpaid obligations. The judge, relying on *Marshall v Marshall*, 135 Mich App 702, 712-713; 355 NW2d 661 (1984), found that the "incorporated but not merged" language limited plaintiff's remedies to an action on the contract, i.e., the settlement agreement, and not by way of a motion to enforce the divorce judgment. We note that following the circuit court judge's ruling, this Court issued *Peabody v DiMeglio*, 306 Mich App 397, 407; 856 NW2d 245 (2014), which construed and analyzed *Marshall*, and determined that the language at issue evidenced an intent "to make the agreement enforceable *both* as a court order and as an ordinary contract." (Emphasis added.) By the time *Peabody* was released, plaintiff had already filed this original civil action in the trial court, alleging counts sounding in breach of contract, unjust enrichment, and promissory estoppel.

In May 2014, defendant filed a motion for summary disposition, contending, in part, that plaintiff's action was time-barred by the statute of limitations or, in the alternative, by the equitable doctrine of laches. Defendant further argued that any obligations to pay under the settlement agreement were discharged in the bankruptcy proceedings. Defendant, anticipating plaintiff's argument that such obligations attendant to divorce actions are not dischargeable in bankruptcy, maintained that, under 11 USC 523, there were two separate exceptions to nondischargeability, i.e.,

---

[10] See *Mich Coalition of State Employee Unions v Michigan*, 498 Mich 312, 320; 870 NW2d 275 (2015); *Langbecker v Electronic Data Sys Corp*, 476 F3d 299, 303 n 2 (CA 5, 2007) ("Most American employees now participate in defined contribution plans such as 401[k] plans than in defined benefit plans."); 26 USC 401(k); 29 USC 1002(34).

[11] In *Patterson v Shumate*, 504 US 753, 765; 112 S Ct 2242; 119 L Ed 2d 519 (1992), the United States Supreme Court, construing the Bankruptcy Code and the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.*, held that "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate[.]" We also note that a 401(k) account is generally exempt in bankruptcy. 11 USC 522(d)(10)(E); see also MCL 600.5451(1)(*l*) (applicable if debtor chooses state exemption scheme).

when the debtor proved an inability to pay the debt or when a discharge would benefit the debtor more than it would harm the debtor's former spouse. According to defendant, minimally there were genuine issues of material fact with respect to both of these exceptions. And, regardless, these questions were within the exclusive province and jurisdiction of the bankruptcy court. In response, plaintiff argued that her action was not time-barred, either under the statute of limitations or the doctrine of laches, that the nature of the debts as divorce-related obligations rendered them nondischargeable in bankruptcy under 11 USC 523, and that the trial court had jurisdiction to decide plaintiff's lawsuit.

On June 2, 2014, the trial court entertained defendant's motion for summary disposition and took the matter under advisement. On June 4, 2014, the trial court entered an order denying defendant's motion for summary disposition and granting summary disposition in favor of plaintiff under MCR 2.116(I)(2), "for the reasons stated on the record at an opinion hearing on . . . June 4, 2014[.]" We have not been provided a transcript of any "opinion hearing" held on June 4, 2014; therefore, we lack a direct record of the reasoning behind the trial court's ruling. Plaintiff subsequently moved for entry of judgment, and a hearing on the motion was held on September 29, 2014. At the hearing, the trial court did, at times, make reference to its summary disposition ruling. The trial court stated its belief that the debts owed by defendant were not dischargeable in the bankruptcy proceedings. The trial court concluded that plaintiff did not have a duty to mitigate her damages by becoming involved in the bankruptcy case or by pursuing an amended QDRO. The trial court entered a judgment in favor of plaintiff in the amount of $90,798, which included contractual late fees and interest, plus taxable costs. Defendant appeals as of right.

On appeal, defendant argues that a genuine issue of material fact exists with respect to whether plaintiff's lawsuit is barred by laches, that a genuine issue of material fact exists with regard to whether an exception to nondischargeability for divorce-related debts applies under 11 USC 523, and that the bankruptcy resulted in the loss of the very assets that were to have been used by defendant to make payment to plaintiff, thereby extinguishing defendant's liability to plaintiff. This Court reviews de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), issues of statutory construction, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), the interpretation and legal effect of a contract, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005), the application of the equitable doctrine of laches, *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005), and questions of law generally, *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). We shall examine defendant's arguments out of order and begin with consideration of the bankruptcy issues.

In general, with respect to a debt discharged under 11 USC 727 (chapter 7), the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 USC 524(a)(2); see *In re Manzanares*, 345 BR 773, 781 (Bankr SD Fla, 2006) ("In accordance with the provisions of § 524, a chapter 7 discharge affects all creditors by voiding the debtor's past liability for debts which are subject to the discharge, and permanently enjoins creditors from 'chasing' debtors."). Defendant here was granted a chapter 7 discharge under 11 USC 727(a), and 11 USC 727(b) provides that, "[e]xcept as *provided in section 523 of this title*, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief under this chapter*[.]"

(Emphasis added.) "[A] judgment imposing personal liability against a debtor for a discharged debt is not merely voidable, but void." *Manzanares*, 345 BR at 781. We now turn to the exceptions to dischargeability found in 11 USC 523.

On the subject of defendant's failure to list or identify plaintiff as a creditor and the debts at issue in the bankruptcy documents, a discharge under 11 USC 727 does not discharge a person from a debt "neither listed nor scheduled . . . with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . timely filing of a proof of claim" or, when fraudulent conduct is involved, in time to permit "timely filing of a proof of claim and timely request for a determination of dischargeability of such debt." 11 USC 523(a)(3)(A) and (B), (2), (4), and (6); see also *Manzanares*, 345 BR at 782 (this exception to dischargeability "is one of fundamental fairness"). The exception to dischargeability in 11 USC 523(a)(3), however, does not apply if the "creditor had notice or actual knowledge of the case in time" to file a proof of claim or to file a request for a dischargeability determination. 11 USC 523(a)(3)(A) and (B); see also *Manzanares*, 345 BR at 782 ("Given that the purpose of the exception is one of fundamental fairness, . . . the statute also provides that an unscheduled creditor who has 'actual knowledge' of the bankruptcy case will nonetheless find its claims discharged;" a creditor has a "duty to object to the discharge of a debt if it has *any* notice or knowledge of a Chapter 7 case[.]") (citation and quotation marks omitted). Here, there is no dispute that plaintiff was known to defendant and known to be one of his creditors under the settlement agreement and divorce judgment. However, although counsel for defendant repeatedly asserted that plaintiff knew or must have known about defendant's bankruptcy proceedings, the record is entirely undeveloped with respect to documentary evidence showing whether plaintiff had notice or actual knowledge of the bankruptcy during the relevant timeframe.

11 USC 523 also provides an exception to dischargeability "for a domestic support obligation[,]" 11 USC 523(a)(5), or for a debt owed "to a . . . former spouse . . . of the debtor and not described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record," 11 USC 523(a)(15). The latter provision, 11 USC 523(a)(15), is clearly applicable to the debts owed by defendant to plaintiff under the settlement agreement and divorce judgment, and defendant does not even contend that the debts were not incurred by defendant in the course of a divorce or in connection with a divorce decree. See *In re Ruitenberg*, 745 F3d 647, 649 (CA 3, 2014) (11 USC 523[a][15] "provides, unqualifiedly, that a property settlement obligation . . . is nondischargeable") (citation and quotation marks omitted). Rather, defendant maintains that the exception to dischargeability under 11 USC 523(a)(15) is subject to its own exceptions where (1) the debtor proves his inability to pay the debt, or where (2) the discharge would benefit the debtor more than it would harm the debtor's former spouse. Defendant, however, is relying on a repealed version of 11 USC 523(a)(15). In *In re Francis*, 505 BR 914, 918 n 4 (Bankr CA 9, 2014), the United States Bankruptcy Appellate Panel of the Ninth Circuit noted:

> [Section] 523(a)(15), as originally adopted in the Bankruptcy Reform Act of 1994, was modified by two affirmative defenses or "exceptions within the exception," for situations where:
>
> "(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in

a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

The two quoted defenses or exceptions to the application of § 523(a)(15) were deleted by Congress in the amendments to the Bankruptcy Code included in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

Accordingly, defendant's argument that there is a genuine issue of material fact regarding these long-repealed exceptions to 11 USC 523(a)(15) lacks merit. We do acknowledge that this case gives rise to some concerns regarding whether we are improperly trampling on the discharge order and the jurisdiction of the bankruptcy court. In *In re Hamilton*, 540 F3d 367, 375 (CA 6, 2008), the Sixth Circuit observed:

[S]tate courts are allowed to construe [a] discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly, because an incorrect application of the discharge order would be equivalent to a modification of the discharge order. Similarly, the state-court judgment in the case at hand would constitute a modification of the discharge in bankruptcy only if the debt was actually discharged pursuant to the bankruptcy court's discharge order.

We are confident here that, under 11 USC 523(a)(15), the discharge order could not have discharged the debts owed by defendant to plaintiff, even had those debts been made known to the bankruptcy court; therefore, our ruling does not constitute a modification of the discharge order. While we believe it would be absolutely futile, defendant is, of course, free to return to the bankruptcy court and seek to reopen the proceedings for purposes of challenging our determination.

The next argument posed by defendant is predicated on his assertion that the "retirement accounts," plural, were made part of the chapter 7 bankruptcy estate and then liquidated by the trustee. Again, there is no documentary evidence supporting these claims, but we shall continue our analysis on the assumption that the defined benefit and defined contribution plans were not exempted and were included in the bankruptcy estate, followed by liquidation. Defendant faults plaintiff for not pursuing an amended QDRO in 2009, as provided for in the settlement agreement, which amended QDRO, had it been obtained, could have been utilized by plaintiff to receive payment on the debts upon withdrawal of the retirement funds related to the QDRO. Defendant argues that once he was in the midst of bankruptcy, he no longer had control of the retirement accounts, making payment to plaintiff via those assets impossible, and that, under the impossibility doctrine, he should be relieved of any liability given that the accounts were eventually liquidated.

First, with respect to an amended QDRO, the settlement agreement made clear that it pertained to only one of the retirement plans and solely to the business-related debt of $64,000, and the agreement did not dictate which party was responsible for seeking an amended QDRO. Next, the amended-QDRO provision in the settlement agreement did not contemplate any exact figure that would be paid toward the debt, considering that the amount of the payment would be entirely dependent upon the value of the pertinent retirement account in 2009, minus taxes and any

penalties. It is plain that under the settlement agreement defendant had an obligation to pay plaintiff $64,000 and that part of the funds, the remaining balance, or possibly none of the funds depending on the status of the account, would come from a retirement account withdrawal after entry of an amended QDRO, *leaving him fully responsible for any amount owing thereafter*. But defendant does not offer in his appellate brief a dollar amount or even an estimate as to the amount of money that would have flowed from the relevant retirement account and then been applied to the debt.[12] Moreover, the essence of defendant's argument is that no retirement plan was tapped at all, contrary to the terms of the settlement agreement, and that this failure fell solely and squarely on plaintiff's shoulders. As acknowledged by defendant himself, in 2009, three years after the divorce, he was in bankruptcy and the retirement accounts were purportedly part of the bankruptcy estate and controlled by the trustee. Accordingly, plaintiff's avenue to obtain an amended QDRO, assuming it to be her obligation to do so, would have entailed, at least in part, interjecting herself in the bankruptcy proceedings, and defendant conceded this point. However, we ultimately can only speculate with respect to how the bankruptcy trustee and court would have treated the matter. Regardless, nothing prevented defendant from informing the bankruptcy court of the settlement agreement and of the debts and the amended-QDRO provision contained therein, which would have resulted in actions by the trustee to address and treat the issues arising from the settlement agreement. Indeed, defendant was obligated to file a list of all his creditors, to file a schedule of all his liabilities, and to file a statement of his financial affairs. 11 USC 521(a). Defendant cannot now complain about the liquidation of the retirement accounts absent a distribution to plaintiff on the debt and then place the blame on plaintiff.

There is no evidence suggesting that the claimed liquidation of the retirement accounts made defendant's contractual promise to pay plaintiff $64,000 impossible; it simply made it impossible to perform under the amended-QDRO provision as to a withdrawal from the pertinent retirement account to pay some undetermined amount toward the debt. And, even as to that limited extent and assuming that the retirement account would have been utilized consistently with the settlement agreement had the bankruptcy court dealt with the issue, the doctrine of impossibility does not shield defendant from liability, because it was defendant's own conduct in filing the bankruptcy petition and not identifying the debt and settlement agreement that caused the impossibility due to liquidation. See *Bissell v L W Edison Co*, 9 Mich App 276, 284; 156 NW2d 623 (1967) (doctrine of impossibility applies when the impossibility is due to circumstances beyond the control of the parties).

Finally, with respect to defendant's laches argument, the doctrine of laches applies when "there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Dep't of Public Health v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996). "It is the prejudice occasioned by the delay that justifies the application of laches." *Knight v Northpointe Bank*, 300 Mich App 109, 115; 832 NW2d 439 (2013). Defendant presents a cursory and vaguely-worded argument regarding laches. We shall skip straight to the issue of prejudice. Defendant suggests that the prejudice caused by

---

[12] We note that, as reflected above, a bankruptcy schedule listed the 401(k) and indicated a November 2008 value of $34,160, which would not have satisfied the entire debt, assuming it to be the pertinent retirement account, even if the full amount were applied.

plaintiff's delay in commencing legal action against him was the liquidation in bankruptcy of the assets associated with the debts. Impliedly, defendant's theory is that those assets would have been available to defray his obligations had plaintiff engaged in legal action prior to liquidation. With respect to the retirement account that was to be subjected to an amended QDRO, our discussion above supports the conclusions that any prejudice would be speculative and that, assuming prejudice, it was caused not by any delay in plaintiff filing suit, but by defendant's own actions and inactions in the bankruptcy proceedings. To the extent that defendant's argument encompasses the marital home and the real estate used in the business, these assets simply constituted security for the debts. Perhaps defendant is suggesting that had plaintiff foreclosed on the assets, or had he been given an opportunity to sell the assets, the debts would have been satisfied. We first note that, as indicated earlier, there were significant existing liens on the properties other than plaintiff's liens, and we can only speculate regarding priority and whether any monies would have been available to pay the debts after sale or foreclosure. Also, given the ongoing proceedings in the bankruptcy court before liquidation, any actions taken in relationship to the properties would have been by or gone through the bankruptcy trustee. And any lawsuit filed by plaintiff or foreclosure measures taken by her would have violated the automatic stay, 11 USC 362. Again, the nature of defendant's argument is to place the blame on plaintiff for not intervening in the bankruptcy case.[13] However, had defendant in the bankruptcy proceedings identified plaintiff as a creditor, listed the debts, and informed the bankruptcy court of plaintiff's security interests in the properties, as he was legally obligated to do, perhaps some of the debt could have been satisfied. Any assumed prejudice, as a matter of law, must be attributed to defendant's own conduct. Reversal is unwarranted.

Affirmed. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.


/s/ William B. Murphy
/s/ Stephen L. Borrello

---

[13] Once more, we have no documentary evidence showing whether plaintiff had knowledge of the bankruptcy proceedings during the relevant timeframe.